Hoch *v.* Hill et al., Appellants.

Argued November 12, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Charles H. Weidner,* with him *Dawson H. Muth* and *Stevens & Lee,* for appellants.

*Edwin L. DeLong,* and with him *C. H. Ruhl,* for appellee.

OPINION BY KELLER, J., March 1, 1935:

This was an action in assumpsit on an oral promise alleged to have been made by the defendants, who are husband and wife, to pay plaintiff the amount of a judgment which she held against Albert R. Hoch and Kate R. Hoch, if she would agree to 'sign off' the judgment.

Most of the following facts are not in real dispute. Albert R. Hoch, Kate R. Hoch and Susan Leibensperger were the owners of certain real estate in the Townships of Maidencreek and Ruscombmanor, and in the Borough of Fleetwood, all in Berks County. The real estate was encumbered with one or more mortgages and certain judgments, aggregating over $10,000. Edwin B. Hill, one of the defendants, was

the owner of one of the mortgages and a judgment, and had taken assignments of one or more judgments, prior in lien to his. On January 21, 1932, the plaintiff, Sallie R. Hoch, a woman seventy-six years old, who was a sister of Albert R. Hoch, Kate R. Hoch and Susan Leibensperger, and the aunt of the defendant, Florence K. Hill, entered up a judgment against Albert R. Hoch and Kate R. Hoch for $971.24, which became a lien on their interests in the abovementioned real estate, subsequent to the liens owned by Edwin B. Hill. Edwin B. Hill was not aware that Sallie R. Hoch's judgment note had been entered of record. The owners of the land were not able to pay off the liens and before the entry of Sallie R. Hoch's judgment there had been some discussion about their conveying the lands to the Hills, and they, apparently, had agreed to do so. Edwin B. Hill consulted a justice of the peace named Rhode and employed him to draw up a deed for the real estate to Hill and his wife. On February 5, 1932 Rhode went to the home of the Hills, in Fleetwood, where Albert R. Hoch, Kate R. Hoch and Susan Leibensperger were living with them, and produced the deed and explained the matter, and the deed was signed by the three owners and delivered to Rhode. The latter attempted, on the trial, to state the 'understanding' on which the delivery to him was made, but was not allowed by plaintiff's counsel to finish (p. 71a). From the context and the rest of his testimony it is apparent that, according to him, the delivery was on the understanding that no additional liens had been entered against the property, in which event the deed would be *accepted* and left for record. Under the arrangement the Hills were to pay off or take care of the prior liens, and if on the sale of the property it realized more than enough to make them whole they would pay over the balance to the grantors. There is no evidence in the case that the arrangement

was not a fair one or that the real estate was worth more than the liens which they knew to be against it.

Rhode and the Hills, later that morning, went to Reading and, on examining the judgment records, found that Sallie Hoch's judgment, of which they had no knowledge, had been entered. The defendants, accordingly, would not accept the deed. Rhode did not record it or deliver it to the Hills, but they all came back to Fleetwood and had a meeting that afternoon with the grantors and Sallie Hoch, the account of which as given by the plaintiff and the defendants, respectively, is vastly different.

Sallie Hoch, the plaintiff, testified that Edwin B. Hill asked her to 'sign off' her judgment; he could not buy the property unless she signed off. She said "I must have my money. I have none, and I must have it or else I wouldn't do it." That Edwin Hill said, "You will get your money." Two or three times, questions were asked her by her counsel in a very leading form, and the substance of all her answers was that Edwin Hill said to her that if she would sign off, she would get her money. For example, "Q. Did you have any conversation there with Mr. Hill. What did Mr. Hill say to you? A. No, he didn't say hardly anything, but he always said, 'You will get your money.' Q. When you went to the office of the prothonotary and he asked you in the prothonotary's office ...... to sign this off in the court house, did you agree to do it then and there? A. Why, he said then I sign it off, then he said I would get my money. Q. At the time you signed off, or immediately prior to the time you signed off, did he make any promises to you? A. He said I would get my money. By the Court: Q. Who said that? A. He said that. Q. Who said it? A. Mr. Hill. By Mr. DeLong [Counsel for plaintiff]: Q. Was Mrs. Hill there, his wife? A. Yes. Q. Did she hear that? A. Oh, she surely did.

Q. Did she say anything about it? A. No ........ Q. Did he, or did he not, promise to secure you by some paper or a note if you would satisfy the judgment? A. I can't say that. I depended on his word and on my paper [a new note given her by Albert and Kate Hoch]. Q. Did he make any promises to you then as to the time he would pay you? A. No, he didn't say any time, he always said when he sold the farm. Q. That is what he said, he promised then that he would pay you your judgment when he sold the farm? A. Yes, he often said that.''

On the other hand, the defendant, Edwin B. Hill, and his witness, Rhode—and they were corroborated to some extent by Kate Hoch,—testified in substance that Rhode told Sallie Hoch that unless she signed off, or satisfied her judgment, the property would be sold at sheriff's sale, and she would have to bid over $10,000 to get anything out of it for herself; that after she said she was willing to sign, Mr. Hill told her that if the property sold for more than what he had in it, he would turn over the surplus to the Hochs, who would give her a new note in place of the judgment; which they did, and which she accepted.

In any event, it is undisputed that on the afternoon of February 5, 1932 the parties went to Reading, the plaintiff satisfied her judgment and the deed to the Hills was then recorded.

The theory of appellee's counsel was that, as Rhode was the agent of the Hills in preparing the deed and attending to its execution, the mere delivery of the executed deed to him by the grantors constituted an immediate delivery to the Hills, irrespective of any expressed understanding or agreement to the contrary, and transferred the ownership of the conveyed real estate to them subject to the appellee's judgment. The trial judge apparently,—as expressed in his cross-examination of the justice of the peace and in

his charge to the jury—, agreed with this view. But the law is otherwise. If the understanding on which the deed was delivered to Rhode amounted, in effect, to a conditional delivery, or a delivery in escrow, it would not be a delivery to the grantees. The fact that Rhode was the agent of the Hills in writing the deed and in securing its execution did not prevent his also acting as the agent of the grantors as respects its delivery. If the expressed understanding was that he should make a search of the lien indexes at Reading before the grantees accepted it and recorded it, a delivery to him for that purpose would not be a delivery to the grantees. The delivery to him would be in escrow, until he could examine the indexes for liens against the grantors to that date; and would be a valid delivery to the grantees only in case he found no additional liens. Hence, in such case, when he got to Reading and found that plaintiff's judgment had been entered against two of the grantors on January 21st, there would have been no effectual delivery to the grantees, conveying ownership to them, and nothing that would prevent a return of the deed to the grantors and a sale of the property on the judgments of the Hills, which would have discharged the appellee's judgment. The matter is more easily understood if we consider a supposititious case. Suppose the Hills had agreed to pay the grantors $10,000 in cash for a deed conveying a clear title. No one would seriously contend that even if the justice of the peace had prepared the deed and was acting for the Hills in securing its execution, the parties could not agree that the grantors would deliver the deed to him in escrow and the grantees would pay him the money in escrow, the actual delivery of the deed to the grantees and of the money to the grantors not to take place until he had examined the records and found no liens against the premises. The same result follows where the deed is

given in satisfaction of liens held by the grantees, if the parties so agreed. Throughout Rhode's examination both plaintiff's counsel and the court, apparently, regarded any agreement, condition or understanding affecting the delivery of the deed to him (See pp. 71a-77a) as wholly immaterial. This misconception of the law pervaded the whole trial.

But there were other errors. The defendant presented a point for binding instructions and contended that there was no evidence in the case of any promise whatever made by the defendant, Florence K. Hill, to the plaintiff, and that the verdict, in any event, must be in her favor. On this point the court, in its charge, said: "The defendants contend that Florence Hill never made any promise at all. The plaintiff contends that she was there, and she testified that 'they said,' and she asks you to infer from that that there was talking back and forth among them, and that it was clearly understood by all, and that it was understood that Florence Hill, as well as Edwin Hill, promised that this money should be paid if the farm was sold. The defendant, Florence Hill, denies that she made any promise, and you will have to decide whether Edwin B. Hill made a promise and whether Florence K. Hill made a promise and whether that promise was as contended for by the plaintiff." The error in this instruction was that the court's recollection of the testimony was wrong. We have read the evidence carefully over and over again and there is not one word in the plaintiff's testimony that can be construed as a declaration that Florence Hill said anything or made any promise whatever. Nor did the plaintiff use the expression 'they said' in referring to the alleged promise. She testified distinctly that 'he said,' and when asked whom she meant by 'he said,' she said 'Mr. Hill.' She testified positively that Mrs. Hill said nothing. And in the very leading examination of the

plaintiff by her counsel, he did not include Mrs. Hill as one of the promisors. See the examination quoted before in this opinion. The promise, if made at all, under the testimony was individual, by Edwin Hill, on his own behalf. The fact that his wife happened to be a co-grantee in the proposed conveyance and was present when the promise was made did not fix her with any personal responsibility. A verdict should have been directed for the defendant wife.

As to the husband, Edwin B. Hill, the situation is different. If the jury believed the plaintiff's testimony they could find a verdict against him in her favor. But he was entitled to a finding by the jury based on a correct theory of the law in the case, and uninfluenced by irrelevant and inflammatory evidence. It made no difference at all, if the transaction was fair and for an adequate consideration, whether the deed to defendants 'divested' the grantors of all their real estate, or not, or whether it conveyed all the property they owned. If the real estate was encumbered by liens which equalled or exceeded its value the transaction was fair and conscionable, and neither the grantor nor the plaintiff had ground to object. Having let in testimony which covertly attacked the fairness and good conscience of the defendants in securing the deed, the defendant, Edwin Hill, should have been permitted to show that the price for which he sold the real estate was its reasonable, market value—this in connection with his evidence that his promise was to pay the Hochs all that he received over what would make him whole.

The second, third, fourth and fifth assignments of error are sustained. The judgment, as to Florence K. Hill, is reversed and judgment is hereby entered in her favor. The judgment, as to Edwin B. Hill, is reversed and a new trial awarded.